UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────

TRUSTEES OF THE NEW YORK CITY
DISTRICT COUNCIL OF
CARPENTERS PENSION FUND,
WELFARE FUND, ANNUITY FUND,
and APPRENTICESHIP,
JOURNEYMAN RETRAINING,
EDUCATIONAL AND INDUSTRY
FUND, *et al.*,

                        Petitioners,

           -v-

ADVANCED CONSTRUCTION
EQUIPMENT CORP.,

                        Respondent.

25-CV-2640 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Petitioners—Trustees of The New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund; Trustees of the New York City Carpenters Relief and Charity Fund; and the Carpenter Contractor Alliance of Metropolitan New York (collectively, "the Funds")—bring this action against Respondent Advanced Construction Equipment Corp. ("Advanced") under Section 301 of the Labor Management Relations Act to confirm and enforce an arbitration award issued by Arbitrator Daniel Engelstein on May 10, 2024. For the reasons that follow, the petition to confirm arbitration is granted.

**I.**    **Background**

      **A.**    **Contract Language**

      Between December 10, 2018, and July 6, 2021, Advanced executed four Sub-Contractor Affidavits of Project Labor Agreement ("PLAs"). (ECF No. 1-1). The first three PLAs bound

1

Advanced to the School Construction Authority Project Labor Agreement that applied to covered work from fiscal year 2015 until August 25, 2020 (the "2015-2020 SCA PLA").  (*See id.*; ECF No. 1-3 at 1.)  The fourth PLA bound Advanced to the School Construction Authority Project Labor Agreement that applied to covered work from fiscal years 2021-2025 (the "2021-2025 SCA PLA").  (*See* ECF No. 1-2; ECF No. 1-4.)

Both the 2015-2020 SCA PLA and the 2021-2025 SCA PLA (collectively, the "SCA PLAs") require contractors like Advanced to "pay timely contributions on behalf of all employees covered by this Agreement to those legally established jointly trusteed employee benefit funds designated in Schedule 'A.'"  (ECF No. 1-2 at 30; ECF No. 1-4 at 31.)  The SCA PLAs, "together with the local Collective Bargaining Agreements appended [to the SCA PLAs] as Schedule A, represent[] the complete understanding of all signatories and supersedes any national agreement, local agreement, or other collective bargaining agreement of any type which would otherwise apply."  (ECF No. 1-2 at 9; ECF No. 1-4 at 9.)  As relevant here, Schedule A incorporated the Independent Building Construction Agreement between the District Council of New York City and the Vicinity of the United Brotherhood of Carpenters and Joiners of America (the "CBA").  (*See* ECF No. 1-2 at 91-92.)

The CBA governs a wide range of possible issues between covered employers and employees, including the obligation of an employer to contribute to various employee funds, of which Petitioners are the Trustees.  (ECF No. 1-5 at 39-48.)  The CBA provides for arbitration and requires that arbitration be conducted before designated arbitrator Roger Maher.  (*See id.* at 36.)  Furthermore, the CBA binds covered employers to "the terms and conditions of the Agreements and Declarations of Trust governing each of the Funds," and "all By-Laws, rules, procedures and policies adopted to regulate each of said Funds, including but not limited to, the

Funds' Revised Statement of Policy for Collection of Employer Contributions." (ECF No. 1-5 at 44.) A Revised Statement of Policy for Collection of Employer Contributions adopted in 2016 (the "2016 Collection Policy"), which was in place at the time Advanced executed the PLA Affidavits, provides that "legal action to collect delinquencies shall generally be in the form of arbitration" and does not specify who the arbitrator should be. (ECF No. 18-8 at 9-10.) A later revision of the same policy (the "2023 Collection Policy"), in place at the time the Funds commenced the audit relevant here, includes the same provision and specifies that arbitration shall be before an arbitrator designated to a panel by the Trustees. (ECF No. 1-10 at 8-9.)

B.   **Procedural Background**

The Funds initiated arbitration before Daniel Engelstein, an arbitrator designated in the 2023 Collection Policy, after an audit revealed that Advanced failed to remit contributions to the Funds in the amount of $3,822.40 over the period of March 28, 2022, to March 12, 2023. (*Id.*; ECF No. 1 ¶¶ 24-26.) After providing a Notice of Hearing to Advanced, Arbitrator Engelstein held the hearing on May 9, 2024. (ECF No. 1-12.) Advanced objected to the hearing and declined to appear. (ECF No. 1 ¶ 28.) On May 10, 2024, Arbitrator Engelstein found in favor of the Funds and ordered Advanced to pay $23,482.08, consisting of: (1) the principal deficiency contained $3,822.40; (2) interest of $639.24; (3) liquidated damages of $764.48; (4) promotional fund contributions of $31.86; (5) attorneys' fees of $1,500; (6) audit costs of $7,526.40; (7) late payment interest of $8,197.79; and (8) the arbitration cost of $1,000. (ECF No. 1-13 at 4.)

On March 31, 2025, the Funds filed a petition to confirm the arbitration award (ECF No. 1) and an accompanying memorandum of law (ECF No. 5). Advanced opposed the petition (ECF No. 14) and the Funds filed a reply (ECF No. 15). On September 23, the Court ordered the parties to provide additional letter briefing on the issue of whether there had been an agreement to arbitrate before Arbitrator Engelstein rather than Arbitrator Maher. (ECF No. 18.) Both

3

parties filed letters, and the Funds attached various exhibits, including the 2016 Collection Policy. (ECF Nos. 18, 18-8, 19.)

## II. Legal Standard

Under the Federal Arbitration Act (the "FAA"), a court "must grant" a petition to confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed in [the FAA]." 9 U.S.C. § 9. "The role of a district court in reviewing an arbitration award is narrowly limited and arbitration panel determinations are generally accorded great deference under the [FAA]." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 103 (2d Cir. 2013) (quotation marks omitted). "[T]he burden of proof necessary to avoid confirmation of an arbitration award is very high, and a district court will enforce the award as long as there is a barely colorable justification for the outcome reached." *Id.* at 103-04 (quotation marks omitted). "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quotation marks omitted). That said, "as arbitration is ultimately a matter of contract, whether the parties have agreed to arbitrate—that is, assented to such a contract—is a question for the court to decide." *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 286 (S.D.N.Y. 2025).

## III. Confirmation of Arbitration Award

Advanced makes two arguments in opposition to the Funds' petition.[1] First, it argues that this Court lacks subject matter jurisdiction to confirm the arbitration award. (ECF No. 14 at

---

[1] Before the arbitrator, Advanced made an additional argument asserting that a prior settlement between the parties precluded the instant arbitration. (ECF No. 1-13 at 4.) Arbitrator Engelstein considered and rejected this argument (*id.*), and although Advanced briefly mentions

4

3-4.) Second, it argues that Advanced never agreed to be bound by an arbitration provision. (ECF No. 14 at 4-6.) The Court takes each in turn.

### A.     Subject Matter Jurisdiction

The Funds' petition asserts federal question jurisdiction under Section 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185. (ECF No. 1 ¶ 2.) Section 301 provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States." 29 U.S.C. § 185(a). Accordingly, "[e]nforcement of an arbitration award issued under a collective bargaining agreement 'is governed by section 301 of the LMRA.'" *Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. All Aces Corp.*, No. 23-CV-9929, 2024 WL 1884701, at *2 (S.D.N.Y. Apr. 30, 2024) (quoting *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016)).

As the Second Circuit has long recognized, "Section 301 of the LMRA provides jurisdiction over '[s]uits for violation of contracts between an employer and a labor organization,' and it is well established that this provision authorizes courts to enforce or vacate labor arbitration awards." *Trs. of New York State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, 102 F.4th 572, 601-02 (2d Cir. 2024) (quoting 29 U.S.C. § 185(a)); *see also Burns Int'l Security Serv., Inc. v. United Plant Guard Wkrs. of Am., Local 537*, 47 F.3d 14, 16 (2d Cir. 1995) ("Section 301(a) of the [LMRA] provides subject matter jurisdiction for an action

---

the prior settlement in the "Background" section of its opposition, it does not argue before this Court that the prior settlement precluded the instant award. (*See* ECF No. 14.) Advanced has therefore forfeited this argument. *See In re Demetriades*, 58 F.4th 37, 54 (2d Cir. 2023).

to vacate an arbitration award."). Despite this precedent, Advanced contends that the Supreme Court's 2022 decision in *Badgerow v. Walters*, 596 U.S. 1 (2022), requires the opposite conclusion. *Badgerow* held that Sections 9 and 10 of the FAA, which provide the procedural mechanisms for a party to petition to confirm or vacate an arbitral award, do not create federal subject matter jurisdiction over such a petition and that a jurisdictional basis independent of the FAA must appear on "the face of the application itself." *Badgerow v. Walters*, 596 U.S. 1, 9 (2022). In other words, if a petition "shows that the contending parties are citizens of different States (with over $75,000 in dispute), then § 1332(a) gives the court diversity jurisdiction," or if the petition "alleges that federal law (beyond Section 9 or 10 itself) entitles the applicant to relief, then § 1331 gives the court federal-question jurisdiction." *Id*. *Badgerow* further clarified that, in determining jurisdiction over a petition to confirm or vacate, courts cannot use a "look-through" approach to consider whether there would be federal question jurisdiction over the underlying substantive dispute. *Id.* at 11.

    Advanced contends that "[l]ike the [FAA], [Section 301 of the LMRA] does not have a specific provision affording Federal Courts jurisdiction over the confirmation of arbitral awards involving labor disputes." (ECF No. 14 at 3-4.) This argument misunderstands the textual analysis in *Badgerow*, which was the basis for rejecting a look-through approach to petitions to confirm or vacate arbitration awards. *Badgerow*, 596 U.S. at 9-11 (holding that the relevant provisions of the FAA lacked the language found in a separate provision of the FAA that warranted a look-through approach for petitions to compel). *Badgerow* considered the text of Sections 9 and 10 of the FAA to determine whether those provisions allowed courts to base jurisdiction on the underlying substantive dispute. *See generally id.* That determination is distinct from the one before this Court, which is whether—without applying the "look through"

6

approach—the face of the Funds' petition presents a jurisdictional basis independent from the FAA.

The Court concludes that the LMRA provides such an independent basis because, contrary to Advanced's argument, Section 301 does specifically provide federal jurisdiction. The Funds' petition challenges Advanced's non-compliance with an arbitration award, which was made pursuant to the contracts signed between the parties. "[F]ederal law (beyond Section 9 or 10 [of the FAA] itself) entitles the applicant to relief," *Badgerow*, 596 U.S. at 9, because the petition to confirm an arbitration award concerns a "[s]uit[] for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce," 29 U.S.C. § 185(a). Such a conclusion does not rely on looking through to the subject matter of the underlying contractual dispute, as "refusal to comply with a labor-arbitration award is itself a contract violation over which the LMRA grants jurisdiction." *Greenhouse Holdings, LLC v. Int'l Union of Painters & Allied Trades Dist. Council 91*, 43 F.4th 628, 631 (6th Cir. 2022). Indeed, this Court and other courts have held that *Badgerow* does not bar jurisdiction under Section 301. *See, e.g.*, *id.*; *Wheeling Power Co. - Mitchell Plant v. Loc. 492, Util. Workers Union of Am., AFL-CIO*, 145 F.4th 468, 473 & n.3 (4th Cir. 2025) (noting that the LMRA "gives district courts jurisdiction to review certain contract disputes between unions and employers"); *Riverbay Corp. v. Serv. Emps. Int'l Union, Loc. 32BJ*, No. 22-CV-10994, 2023 WL 2136423, at *4 (S.D.N.Y. Feb. 21, 2023); *see also Trs. of New York State Nurses Ass'n Pension Plan*, 102 F.4th at 601-02 (favorably citing the Sixth Circuit's decision in *Greenhouse Holdings*).

Accordingly, this Court has jurisdiction to entertain the petition to confirm arbitration.

### B.     Agreement to Arbitration

Advanced principally argues that confirmation is improper because it never agreed to be bound by the CBA. This argument is unavailing. Advanced signed a series of PLA Affidavits,

7

which bound it to "the provisions of the [SCA PLA] in effect for this contract." (*See* ECF No. 1-1 at 4.) Advanced does not dispute being bound by the SCA PLAs (ECF No. 14 at 4), but it argues that this alone does not bind it to the CBA. However, the Second Circuit "ha[s] specifically found that parties were bound to arbitrate under arbitration clauses they never signed, where those clauses were contained in other documents that were incorporated by reference." *Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 97 (2d Cir. 2002). Here, the SCA PLAs incorporate by reference the CBA (ECF No. 1-4 at 9), which contained an arbitration provision (ECF No. 1-5 at 36). Moreover, the CBA in turn incorporated "all By-Laws, rules, procedures and policies" adopted by the Funds' Trustees, including the 2016 Collection Policy, which also contained an arbitration requirement for "legal action to collect delinquencies." (ECF No. 1-5 at 36.; ECF No. 18-8 at 9.) Multiple layers of incorporation by reference do not make an arbitration provision unenforceable, even when the contract signed contained no mention of arbitration. *Pagaduan v. Carnival Corporation*, 709 F. App'x 713, 716 (2d Cir. 2017) (summary order) (holding that plaintiff being "unaware of the arbitration clause" that was two incorporations removed from the contract signed did not "rebut[] the powerful presumption in favor of enforcing freely negotiated contracts, especially in the arbitration context"). Thus, Advanced is bound by the CBA as well as the policies incorporated by reference by the CBA.

Advanced further contends that, even if it is bound by the CBA, a supremacy clause in the SCA PLAs forecloses the applicability of the CBA's arbitration provision to the dispute at issue. (*See* ECF No. 19 at 2.) Article 2 § 4 of the SCA PLAs provides that the SCA PLA shall prevail if a subject is also covered by a Schedule A collective bargaining agreement. (*See* ECF No. 1-4 at 10.) Advanced argues that an article of the SCA PLA addressing payments of benefits

8

outlines a procedure for withholding amounts payable to contractors and remitting owed payments to funds without contemplating arbitration, thus superseding the CBA's arbitration provision. (ECF No. 19 at 2 (citing ECF No. 1-4 at 31-36).) But that section of the SCA PLA expressly provides that, if an employer disputes the alleged delinquency in benefits payments, the SCA withholds the amounts payable "pending resolution of the dispute *pursuant to the Union's Schedule 'A' agreement*." (ECF No. 1-4 at 35 (emphasis added).) This provision of the SCA PLA hardly suggests that arbitration is inappropriate—rather, it confirms that disputes over benefits payments should be resolved through procedures set out in the collective bargaining agreements incorporated through Schedule A, such as the CBA.

Advanced also argues that the SCA PLAs control over the CBA because they provide for arbitration in two instances, neither of which involves benefits payments. (ECF No. 19 (citing ECF No. 1-4 at 23-25, 27-30).) But one of the articles provides that arbitration may be *expedited* when an employee participates in a strike, slowdown, or other disruptive activity. (ECF No. 1-4 at 25.) The other article outlines a general grievance and arbitration procedure for resolving disputes arising out of the SCA PLA. (*Id.* at 27.) Neither provision addresses the arbitrability of disputes over benefits payments or negates the provision specific to disputes over benefits payments, which calls for the CBA to apply.

Lastly, Advanced argues that, even if it was bound by the CBA, and even if the CBA incorporated certain policies, it is not bound by the 2023 Collection Policy. (ECF No. 14 at 5.) The Funds' petition relies in part on the 2023 Collection Policy as the basis for arbitrability. (ECF No. 1 ¶¶ 18-19.) As relevant here, that policy expressly designates the arbitrator who issued the award at issue here, Arbitrator Engelstein (ECF No. 1-10 at 8-9), whereas the CBA designated only Roger Maher (ECF No. 1-5 at 36). As Advanced points out, the 2023 Collection

Policy post-dates the last PLA Affidavit signed by Advanced. (*Compare* ECF No. 1-10 at 1 *with* ECF No. 1-1 at 4.) After an order from this Court, the Funds furnished the 2016 Collection Policy, which was in place when Advanced signed the PLA Affidavits. (ECF No. 18-8 at 1.) That policy, as discussed above, provides for arbitration over disputes to collect delinquencies in employer contributions, and it does not name any specific arbitrator. (*Id.* at 9.) The Funds also explained, albeit in unsworn briefing, that Arbitrator Maher suffered a stroke after the execution of the last PLA Affidavit and therefore could not preside over the arbitration. (ECF No. 18 at 3.)

Advanced is likely right that the PLA Affidavits could not have incorporated the 2023 Collection Policy, which did not yet exist. *See Trs. of the Nat'l Automatic Sprinkler Indus. Pension Fund v. Fairfield Cnty. Sprinkler Co.*, Inc., 243 F.3d 112, 117 (2d Cir. 2001) ("It is a settled principle of federal labor law that an instrument may incorporate by reference only the terms of an instrument already in existence." (quotation marks omitted)). But this is not fatal to the Funds' petition to confirm. Rather, as discussed above, arbitration provisions existed in both the CBA, which was incorporated by reference in the SCA PLAs, and the 2016 Collection Policy, which did exist at the time the PLA Affidavits were signed, and which was incorporated by reference in the CBA. (ECF No. 1-5 at 36; ECF No. 18-8 at 9.)

Thus, Advanced indisputably agreed to arbitration, and the only question is whether it assented to arbitration before Arbitrator Engelstein. In its opposition to the Funds' petition to confirm, Advanced does not articulate an argument that arbitration was improper because of the identity of the arbitrator. (*See generally* ECF No. 14 at 4-6.) Although it notes that Arbitrator Engelstein was appointed in the 2023 Collection Policy, Advanced fails to argue that arbitration should have been before Arbitrator Maher. (*Id.* at 5.) Indeed, Advanced did not quote or cite any provision of the CBA in support of its argument. Only in a subsequent letter brief

10

responding to this Court's order did Advanced contend that the CBA required arbitration to be before Arbitrator Maher. (ECF No. 19 at 2-3.) In support, Advanced's letter brief cited Article XII of the CBA, which provides that "[a]ny grievance . . . shall be submitted to arbitration before Roger Maher." (*Id.*; ECF No. 1-5 at 36.)

The Court concludes that the 2016 Collection Policy, and its provision allowing arbitration without requiring a specific arbitrator, controls over Article XII of the CBA. When "parties have multiple agreements that conflict" on the issue of arbitration, "traditional contract principles apply." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 149 (2024). One such "well-established principle of contract interpretation" is that "specific provisions concerning an issue are controlling over general provisions." *City of Buffalo City Sch. Dist. v. LPCiminelli, Inc.*, 73 N.Y.S.3d 836, 842 (4th Dep't 2018) (quotation marks omitted). "[S]pecific words will limit the meaning of general words if it appears from the whole agreement that the parties' purpose was directed solely toward the matter to which the specific words or clause relate." *Aramony v. United Way of Am.*, 254 F.3d 403, 414-15 (2d Cir. 2001) (quotation marks omitted). "Moreover, 'the rules of construction of contracts require the court to adopt an interpretation which gives meaning to every provision of a contract or, in the negative, no provision of a contract should be left without force and effect.'" *Speedfit LLC v. Woodway USA, Inc.*, 642 F. Supp. 3d 429, 443 (S.D.N.Y. 2022) (quoting *Macy's Inc. v. Martha Stewart Living Omnimedia, Inc.*, 6 N.Y.S.3d 7, 11-12 (2015)).

Here, the 2016 Collection Policy governs "the collection of employer contributions" and the resolution of disputes over delinquent contributions. (ECF No. 18-8 at 1.) The 2016 Collection Policy's arbitration provision, which requires that "legal action to collect delinquencies shall generally be in the form of arbitration" unless otherwise provided in the

11

policy, thus concerns the specific issue before this Court—resolution of disputes over employer contributions such as benefits payments. (*Id.* at 9.) Indeed, the section goes on to detail specific procedures and guidelines for arbitration and settlement in the context of delinquent contributions. (*Id.*) In contrast, the CBA is aimed broadly at "insur[ing] the peaceable adjustment and settlement of any and all grievances, disputes, or differences that may arise between the parties as such or between them as Employer and employee" (ECF No. 1-5 at 3). Accordingly, Article XII of the CBA applies broadly to "[a]ny grievance," which is "defined as any complaint(s), dispute(s), and differences concerning the application, interpretation, effect, purpose or breach of any term or condition of this [CBA], or any claim, demand, dispute, or controversy between the parties hereto." (ECF No. 1-5 at 35-36.) In other words, Article XII of the CBA enacts a general rule requiring arbitration for *all* grievances, while the 2016 Collection Policy lays out a specific rule in the context of delinquent contributions. Under traditional principles of contract interpretation, the more specific 2016 Collection Policy should govern the arbitration here. *Aramony*, 254 F.3d at 414. This is especially true where, as here, the arbitration provision in the 2016 Collection Policy would be rendered superfluous if the present arbitration were governed solely by the CBA. *Macy's Inc.*, 6 N.Y.S.3d at 11-12.[2]

---

[2] The Court notes that a more specific CBA provision, Article XV, could potentially govern the employer contributions at issue here and contains an arbitration provision naming Roger Maher as the designated arbitrator. (ECF No. 1-5 at 48.) Advanced failed to raise this more specific provision of the CBA, both in its opposition and in its subsequent letter brief. (*See generally* ECF No. 14 at 4-6; ECF No. 19 at 2-3.) Instead, the one citation Advanced makes to the CBA in its briefing is to Article XII. (ECF No. 19 at 3.) Indeed, Advanced did not make any challenge related to these provisions in its response to the Notice of Arbitration Hearing it received. (ECF No. 14-3.) Accordingly, Advanced has forfeited any argument that Article XV of the CBA controls over the 2016 Collection Policy and the Court need not determine which provision controls. *See Demetriades*, 58 F.4th at 54; *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998) ("[I]f [a party] failed to raise [an] issue . . . to the arbitrators, the issue is forfeited.").

Accordingly, the 2016 Collection Policy—to which Advanced is bound—controls the arbitration at issue here. Because that policy did not require any specific arbitrator, Advanced assented to arbitration before Arbitrator Engelstein.[3]

### C. Other Considerations

Advanced makes no challenges to the substance of the award, relying instead on the jurisdictional and arbitrability arguments discussed above. Nonetheless, "the Court must still 'examin[e] the moving party's submission to determine if it has met its burden.'" *Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund v. Harbor Island Contracting Inc.*, 2015 WL 5146093, at *1 (S.D.N.Y. Aug. 31, 2015) (alteration in original) (quoting *D.H. Blair*, 462 F.3d at 110). As discussed above, the CBA and 2016 Collection Policy permitted the Funds to seek arbitration in the event of Advanced's delinquency. Arbitrator Engelstein properly notified all parties in advance of the arbitration hearing, which Advanced did not attend, and did not exceed his authority in issuing the award. (ECF Nos. 1-12, 1-13.) Given the record established by the Arbitrator's Award and given "no evidence of a genuine dispute as to any material fact," the petition is granted. *Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. RNW Elec. Corp.*, No. 22-CV-8232, 2023 WL 3080776, at *2 (S.D.N.Y. Apr. 25, 2023).

---

[3] In a sentence, Advanced opposes confirmation of the award on the basis that the Notice of Arbitration was defective (because it relied on the 2023 Collection Policy) and Arbitrator Engelstein had no authority to issue an award. (ECF No. 14 at 5.) To the extent that argument is distinct from Advanced's arguments about whether it agreed to arbitrate before Engelstein, it is untimely. Advanced's deadline to raise arguments for vacatur of the arbitration award expired on August 8, 2024, ninety days after the award was issued on May 10, 2024. *See Loc. 802, Associated Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998) (rejecting as time-barred the argument that arbitrator lacked jurisdiction).

**IV.     Attorney's Fees and Costs**

The Funds also seek attorney's fees and costs. (ECF No. 1 at 7-8.) The CBA provides that, if "formal proceedings are instituted . . . by the trustees of a . . . Fund[] to collect delinquent contributions," and if the court renders a judgement in favor of the Funds, then "the Employer shall pay to such Fund(s), in accordance with the judgement of the court . . . reasonable attorney's fees and costs of the action." (ECF No. 1-5 at 46.) Advanced does not challenge the Funds' request. (*See* ECF No. 14.) The Funds seek $1,273 in attorneys' fees and $484.50 in costs. (ECF No. 1 at ¶¶ 43-44.) They supply documentation of four hours of work allocated as follows: thirty minutes from a partner at V&A, billed at $410 per hour; three and a half hours from an associate attorney billing $310 per hour; and twenty minutes from an associate attorney billing at $325 an hour. (*Id.* at ¶¶ 38-43; ECF No. 1-15.) These rates are reasonable. *Accord Trs. of the New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Inniss Constr., Inc.*, No. 20-CV-6894, 2021 WL 2556130, at *5 (S.D.N.Y. May 13, 2021), *report and recommendation adopted sub nom. Trs. of New York City Dist. Council of Carpenters Pension Fund v. Inniss Constr., Inc.*, No. 20-CV-6894, 2021 WL 2555840 (S.D.N.Y. June 22, 2021).

**V.     Conclusion**

For the foregoing reasons, the Funds' petition to confirm the arbitration award is GRANTED. The Clerk of Court is directed to enter judgment in favor of Petitioners in the amount of $23,482.08, plus $1,273 in attorney's fees and $484.50 in costs, and to close this case.

SO ORDERED.

Dated: October 15, 2025
       New York, New York

_____
J. PAUL OETKEN
United States District Judge